993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Raymond DUDLEY, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-3855.
 United States Court of Appeals, Seventh Circuit.
 Argued May 14, 1993.
Decided June 1, 1993.
 
 Before BAUER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.
 
 Order
 
 1
 Raymond Dudley seeks an award of disability benefits under the Social Security Act. The Administrative Law Judge concluded, and Dudley concedes for current purposes, that although he experiences some limitations in movement he is physically able to work. But he contends that mental shortcomings, attributable to a combination of marginal intelligence and sustained drug abuse, make employment a practical impossibility. So the Secretary has now concluded, awarding benefits because of Dudley's deterioration after the period covered by the current record. But during the period in question, between 1986 and 1990, Dudley was younger (50 at the time of the hearing) and in better mental shape.
 
 
 2
 A psychologist, Richard Hamersma, administered a battery of tests. Dr. Hamersma concluded that Dudley did not exhibit "clear cut signs of organic brain syndrome" but that "there were some mild changes evident on one of the tests." Considering the results of all tests, Dr. Hamersma rated Dudley's abilities in 19 areas. He concluded that Dudley was "not significantly limited" in 12, had "moderate" limitations in 5, and had "marked" limitations in 2: ability to understand and remember detailed instructions, and ability to carry out detailed instructions. Dudley accepts Dr. Hamersma's findings and contends that they establish his entitlement to benefits. The ALJ also accepted Dr. Hamersma's findings but reached a contrary conclusion. Both a magistrate judge and a district judge concluded that the ALJ's ultimate disposition is supported by substantial evidence.
 
 
 3
 Everything comes down to the extent to which the seven areas of "moderate" or "marked" limitation impair Dudley's ability to perform jobs that exist in significant numbers in the national economy. Because Dudley has non-exertional impairments, the ALJ obtained an evaluation by a vocational expert. The vocational expert concluded that a person with such disabilities remains able to perform about 141,000 jobs in the Chicago area.
 
 
 4
 The vocational expert also answered a hypothetical question formulated by Dudley's lawyer, stressing the cumulation of all physical and mental impairments (stated, as one might expect, to emphasize the limitations Dudley says afflict him). The vocational expert concluded that from this perspective Dudley could not function as a guard (eliminating 20,000 positions), that the number of security monitor jobs would fall by one-half (to 7,500), and that the number of other jobs would fall by one-third. The vocational expert stated that the number of jobs was "substantially restricted" but did not explain what this meant. This sets up Dudley's arguments in this court: that the vocational expert's failure to attach a number to this conclusion means that there is no "substantial evidence" that he could perform significant numbers of jobs.
 
 
 5
 At one point the vocational expert opined that with all mental limitations counsel asked the expert to assume, Dudley could perform a third of the original 141,000 jobs. Indeed, he stated that a person with all the impairments Dudley says he has (including some the ALJ specifically disbelieved) could perform 25,000 to 27,000 jobs in the Chicago area (10,000 visual inspector jobs, 5,000 to 7,000 packaging jobs, and 10,000 assembly jobs). A request to assume additional mental shortcomings led to the "substantially restricted" answer--which, Dudley's lawyer stresses, could mean anything. The ALJ might have concluded that the advocate's hypothetical was not the best way to look at Dudley's circumstances, but the ALJ did not make such a finding, at least not expressly.
 
 
 6
 The ALJ evidently agreed with the vocational expert's conclusion, maintained in the face of cross examination, that 141,000 jobs is the best estimate. That is a finding on the essential issue. It is not a compelling finding, because in reaching this number the ALJ did not take account of mental limitations. It would have been preferable had the ALJ spelled out what happens if these factors are included, as the vocational expert did on cross-examination. Still, it is not necessary for an ALJ to make findings addressing every permutation raised by questions asked on cross-examination (that is when the vocational expert used the words "substantially restricted"); all that is necessary is that the path to the decision be rationally ascertainable and supported by substantial evidence. Stein v. Sullivan, 966 F.2d 317, 319-20 (7th Cir.1992); Waite v. Bowen, 819 F.2d 1356, 1360 (7th Cir.1987); Stephens v. Heckler, 766 F.2d 284, 287-88 (7th Cir.1985). Both the magistrate judge and the district judge concluded that the ALJ's path to decision is ascertainable, rational, and supported by substantial evidence; we agree with that assessment.
 
 
 7
 For what it is worth, we add that the vocational expert does not appear to have meant by "substantially restricted" anything more than what he said initially: one major category of jobs would be eliminated, and the available numbers of others would be significantly diminished (by halves or thirds). Even a 90% diminution from the figure of 25,000 to 27,000 jobs that reflected all of Dudley's asserted impairments would leave 2,500 jobs in the Chicago area alone. We recently concluded that such a number is enough, citing other cases that had treated fewer that 200 jobs as enough. Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir.1993). It therefore does not matter whether the vocational expert meant a cumulative 50% reduction, a 90% reduction, or even a 95% reduction. Returning this case to the ALJ for another opinion on the current record would be an exercise in formality. Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir.1989).
 
 
 8
 AFFIRMED.