**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2711
_____

UNITED STATES OF AMERICA

v.

THAIS Y. THOMPSON,

Appellant.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-05-cr-00440-022)
District Judge:  Honorable R. Barclay Surrick

Submitted Under Third Circuit LAR 34.1(a)
on September 11, 2012

Before:  SCIRICA, ROTH, and BARRY, Circuit Judges

(Opinion filed  February 7, 2013)

_____

O P I N I O N
_____

**ROTH,** Circuit Judge:

Thais Thompson appeals from her May 24, 2010, judgment of conviction.  For the

reasons that follow, we will affirm the judgment of the District Court.

## I. Background

Thais Thompson was the girlfriend of James Morris, the supplier of a cocaine distribution gang led by Alton Coles. On August 10, 2005, after a lengthy investigation, federal agents executed search warrants on houses and automobiles connected to members of Cole's distribution gang, including the residence of Morris and Thompson. Numerous items were seized from the house, including $559,326 in cash, a money counting machine, a handgun, ammunition, and drug paraphernalia.

On April 11, 2006, Thompson delivered a payment of $25,000 in cash to an attorney on behalf of Alton Coles. An Internal Revenue Service form, which was provided by the attorney's secretary, gave Thompson's name, the date of the transaction, the amount of cash, and the purpose of the payment. The IRS form was accompanied by a photocopy of Thompson's driver's license.

Thompson was subpoenaed, and on June 7, 2006, she appeared before a federal grand jury. She was warned of the consequences of perjury. While under oath, Thompson was asked whether the money that was found in the house belonged to Morris. She stated that it did not belong to Morris, but was instead left to her by her deceased grandfather. Thompson was also asked if she made any payments on behalf of anyone to an attorney and if she had ever given $25,000 in cash to anyone. She answered "no" to both questions.

On February 21, 2007, the grand jury returned the Fifth Superseding Indictment charging Thompson and 21 co-defendants with various offenses related to their involvement with cocaine distribution. Thompson was charged with one count of

2

possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) and (2), three counts of committing perjury before a federal grand jury, in violation of 18 U.S.C. § 1623(a), and one count of acting as an accessory after the fact to a drug conspiracy, in violation of 18 U.S.C. § 3. In particular, Count 189 alleged that Thompson falsely testified that she had not made payments to an attorney other than her own and that she had not given $25,000 in cash to anybody, and Count 191 alleged that Thompson falsely testified that the money discovered in the house did not belong to Morris.

At trial, an agent testified to the importance of these matters for the investigation, stating that the financial portions of the investigation were ongoing and that the source of the seized cash was of interest. As to the delivery of cash to the attorney, the agent testified that there was interest in whether Thompson had $25,000 in cash at any time.

On March 5, 2008, Thompson was convicted of Counts 189 and 191 and found not guilty of the other counts. On May 21, 2010, Thompson was sentenced to 12 months' imprisonment, to be followed by 30 months of supervised release. Thompson appealed.

## II. Discussion

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### A. Materiality

Thompson argues that the evidence was insufficient to support a jury finding that her false statements were material. "Our review of the sufficiency of the evidence after a guilty verdict is highly deferential." *United States v. Hodge*, 321 F.3d 429, 439 (3d Cir.

3

2003) (internal quotations omitted). "[We] review the evidence in the light most favorable to the prosecution and sustain the verdict unless it is clear that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010). To prove perjury, the government was required to show that Thompson knowingly made a material false declaration under oath before a grand jury. 18 U.S.C. § 1623(a). A false statement is material if "it has a tendency to influence, impede, or hamper the grand jury from pursuing its investigation." *United States v. Reilly*, 33 F.3d 1396, 1419 (3d Cir. 1994) (inner quotations omitted).

Thompson argues that her false statements did not actually influence the investigation and prosecution and thus could not have been material. Materiality is not, however, a question of whether the false statements *actually* influenced the investigation or prosecution, but whether the false statements were "capable of influencing" the investigation or prosecution. *United States v. McLaughlin*, 386 F.3d 547, 555 (3d Cir. 2004). It is inconsequential that the investigation was not centered on Thompson or that she was not convicted of participation in the criminal activities beyond perjury. It was reasonable for the jury to find that false statements concerning the finances of the organization, particularly the ownership of the $559,326 in cash found in the house and the source of the $25,000 in cash used to pay an attorney, were material to the investigation. Questions concerning money related to the scale of the drug trafficking operation and to money laundering charges, and false statements obfuscating those facts were capable of influencing, impeding, or hampering the grand jury.

4

**B. "Perjury Trap"**

Thompson next contends that the government's true purpose in questioning her was to set up a "perjury trap," and that such a misuse of the grand jury is grounds for overturning her conviction. No objection was made at trial on the basis of a "perjury trap," and so we review for plain error. *United States v. Boone*, 279 F.3d 163, 174 n.6 (3d Cir. 2002). This Court has not yet decided whether to recognize the "perjury trap doctrine," and we need not do so today because the doctrine does not apply to the circumstances of this case. The principal inquiry under the "perjury trap doctrine" is whether the witness was called "before the grand jury for the primary purpose of obtaining testimony from [the witness] in order to prosecute [the witness] later for perjury." *United States v. Chen*, 933 F.2d 793, 796 (9th Cir. 1991). Here, the record shows that Thompson's testimony was important to the investigation, and the primary purpose of calling her before the grand jury was not to secure a perjury conviction. Although the government already had certain evidence in its possession regarding the matters to which Thompson testified, it was preparing criminal charges required to be proven beyond a reasonable doubt. Thus, the weight of additional testimony could have been significant in securing convictions.

**C. Opportunity to Recant**

Thompson further argues that she was not offered an opportunity to recant pursuant to 18 U.S.C. § 1623(d). Thompson improperly relies on a vacated opinion, *United States v. Lardieri*, 497 F.2d 317, *vacated on rehearing by* 506 F.2d 319 (3d Cir.

1974).  We have held that "a reversal of the conviction is not required by section 1623 as a result of the prosecutor's not having given" the witness "notification of the recantation provision in the statute."  506 F.2d at 322.  After examining the text of the statute and the congressional history, which reveal that the statute's purpose is to facilitate perjury convictions for a deterrent effect, we concluded that there is no disclosure requirement in the statute.  *Id.* at 323-24.

## III.  <u>Conclusion</u>

For the foregoing reasons, we will affirm the judgment of the District Court.